**WANGER JONES HELSLEY PC**
265 East River Park Circle, Suite 310
Fresno, California 93720
Telephone: (559) 233-4800
Facsimile: (559) 233-9330
Scott D. Laird #190122
slaird@wjhattorneys.com
Ethan E. Mora #317937
emora@wjhattorneys.com

Attorneys for:    Plaintiff RHN Food Group Holdings, Inc., Rolling Hills Nut Company LLC and
Northside Food Company LLC

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT, SACRAMENTO DIVISION

| | |
|---|---|
| RHN FOOD GROUP HOLDINGS, INC., a California Corporation, ROLLING HILLS NUT Company LLC, a Delaware Limited Liability Company and NORTHSIDE FOOD COMPANY LLC, a Delaware Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> CANTOR FITZGERALD & CO., a New York State Corporation; and DOES 1 through 25, inclusive, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR:** <br>   **(1) FRAUD-INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS;** <br>   **(2) FRAUD-NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS;** <br>   **(3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST ALL DEFENDANTS;** <br>   **(4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS;** <br>   **(5) CONSPIRACY AGAINST ALL DEFENDANTS;** <br>   **(6) RECISSION BASED ON MISTAKE (CAL. CIV. CODE §1689 ET SEQ.); AND** <br>   **(7) DECLARATORY RELIEF.** <br><br> **JURY TRIAL DEMANDED** |

### BACKGROUND ALLEGATIONS

1.    Plaintiff RHN Food Group Holdings, Inc. ("RHN") is, and at all times relevant herein was, a California corporation, authorized by and existing by virtue of the laws of the State of

COMPLAINT FOR: (1)FRAUD-INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS; (2) FRAUD-NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS; (3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST ALL DEFENDANTS; (4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS; (5) CONSPIRACY AGAINST ALL DEFENDANTS; (6) RECISSION BASED ON MISTAKE (CAL. CIV. CODE §1689 ET SEQ.); (7) AND DECLARATORY RELIEF.

4938-2627-9577, v. 1

California, with its principal place of business in the County of Stanislaus, California. RHN is a holding company for several businesses including Plaintiffs Rolling Hills Nut Company LLC and Northside Food Company LLC.

2.    Plaintiff Rolling Hills Nut Company LLC, ("Rolling Hills") is, and at all times relevant herein was, a limited liability company authorized by and existing by virtue of the laws of the State of Delaware, with its principal place of business in the County of Stanislaus, California. Rolling Hills was merged from a California company, Rolling Hills Nut Company, for the purpose of selling Rolling Hills.

3.    Plaintiff Northside Food Company LLC ("NFC") is, and at all times relevant herein was, a limited liability company authorized by and existing by virtue of the laws of the State of Delaware, with its principal place of business in the County of Stanislaus, California. NFC was merged from a California company, Northside Food Corporation, for the purposes of selling NFC.

4.    Defendant Cantor Fitzgerald & Co., Inc. ("Cantor") is, and at all times relevant herein was, a corporation authorized and existing by virtue of the laws of the State of New York, authorized to do business in California and doing business in the County of Stanislaus, State of California.  Plaintiffs are informed and believe, and on that basis allege that at all times herein, Defendant was an investment bank and advisor on financial and corporate matters, including acquisition prospects and marketing.

5.    The true names and capacities, whether individual, corporate, associate, government, or otherwise of Defendants DOES 1 through 25, inclusive, are unknown to Plaintiff, who therefore sues herein said Defendants by such fictitious names pursuant to Section 474 of the California Code of Civil Procedure and prays leave of court to amend its Complaint to set forth the true names and capacities of said Defendants when the same have been ascertained.

6.    Plaintiffs are informed and believe, and on such information and belief allege that, at all times herein, relevant, each of said Defendants were acting as the agent, servant, employee, partner and/or joint venturer of each of the remaining said Defendants, and was acting in concert with each remaining said Defendant in doing the things herein alleged, while at all times acting within the

COMPLAINT FOR: (1)FRAUD-INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS; (2) FRAUD-NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS; (3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST ALL DEFENDANTS; (4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS; (5) CONSPIRACY AGAINST ALL DEFENDANTS; (6) RECISSION BASED ON MISTAKE (CAL. CIV. CODE §1689 ET SEQ.); (7) AND DECLARATORY RELIEF.

4938-2627-9577, v. 1

course and scope of such agency, employment, partnership and/or concert of action. Plaintiffs are informed and believe, and upon that basis allege, that at all times relevant to this action, Defendants performed work on and/or provided materials to the project identified in more detail below.

## JURISDICTION AND VENUUE

7.     This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.A. § 1332 regarding diversity jurisdiction. The dispute concerns an amount-in-controversy in excess of $75,000 and concerns diverse parties. Plaintiff RHN is a California corporation with its principal place of business in California. Plaintiff Rolling Hills is a Delaware limited liability company with its principal place of business in California. Plaintiff NFC is a Delaware limited liability company with its principal place of business in California. Defendant Cantor is a New York corporation with its principal place of business in New York.

8.     Venue is proper in the Eastern District because the contract at issue was entered into within the Eastern District of California, the events giving rise to this suit occurred within the Eastern District of California, and the damage to Plaintiff was also suffered therein.

## FACTUAL BACKGROUND

9.     Plaintiff Rolling Hills is an almond handler that specializes in processing a variety of almonds. Plaintiff NFC is a value added nut processor, specializing in almond flour, almond butter, and flavored almonds. RHN is a holding company created in or about May 2022 for the purposes of effectuating a transaction involving the sale of Rolling Hills and NFC.

10.     On or about May 23, 2022, Plaintiffs Rolling Hills and NFC entered into an agreement with Deloitte (the "Deloitte Advisory Agreement"), whereby Deloitte was to provide Rolling Hills and NFC professional advisory services related to a potential sale transaction involving these Plaintiffs' companies.

11.     Lorin DeMordaunt ("DeMordaunt") is an individual who was employed by Deloitte Corporate Finance LLC ("Deloitte"), a competitor of Cantor, for approximately 10 years until around September 2023, when DeMordaunt left Deloitte to work for Cantor. Plaintiffs are informed and believe, and on that basis allege that, towards the end of his employment by Deloitte and while

COMPLAINT FOR: (1)FRAUD-INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS; (2) FRAUD-NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS; (3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST ALL DEFENDANTS; (4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS; (5) CONSPIRACY AGAINST ALL DEFENDANTS; (6) RECISSION BASED ON MISTAKE (CAL. CIV. CODE §1689 ET SEQ.); (7) AND DECLARATORY RELIEF.

4938-2627-9577, v. 1

interacting with Plaintiffs, DeMordaunt was a Managing Director, and served as the head of Deloitte's Consumer and Retail Group, and the leader of Deloitte's Food, Beverage & Agriculture team (the "Deloitte Team"). As such, Plaintiffs are informed and believe, and based thereon allege that the course and scope of DeMordaunt's employment at Deloitte involved staffing, overseeing, and/or managing the Deloitte Team, facilitating and engaging in direct client interactions, and managing the project involving the services the Deloitte Team provided to Plaintiffs Rolling Hills and NFC.

12. In connection with the Deloitte Advisory Agreement, Deloitte executed and delivered to Rolling Hills and NFC a non-disclosure agreement (the "Deloitte NDA"). The Deloitte NDA was signed by DeMordaunt as Managing Director of Deloitte.

13. On or about May 27, 2022, Rolling Hills and NFC each merged from California entities, each into a separate Delaware limited liability companies, in anticipation of the future transaction contemplated by the Deloitte Advisory Agreement.

14. In or about October 2022, Deloitte presented Rolling Hills and NFC Plaintiffs a "Confidential Information Memorandum" (the "Deloitte CIM"), which was a comprehensive document presented to Plaintiffs in anticipation of the transaction involving the Rolling Hills and NFC Plaintiffs' companies.

15. Plaintiffs are informed and believe, and on that basis allege that in or before September 2023, Defendant Cantor recruited DeMordaunt and enticed him to leave Deloitte.

16. In or about September 2023, DeMordaunt left his position at Deloitte and was hired as a Managing Director by Defendant Cantor.

17. Plaintiffs are informed and believe, and on that basis allege that the scope of DeMordaunt's employment with Cantor involved soliciting potential clients for Cantor and staffing Cantor's business deals and projects involving companies in the Food, Beverage, and Agriculture sectors.

18. Plaintiffs are informed and believe, and on that basis allege that from at least September 2023 to around February 2, 2024, Defendant Cantor and the fictitiously named defendants (Does 1-25) conspired to induce Plaintiffs Rolling Hills and NFC to terminate the Deloitte Advisory

4

COMPLAINT FOR: (1)FRAUD-INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS; (2) FRAUD-NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS; (3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST ALL DEFENDANTS; (4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS; (5) CONSPIRACY AGAINST ALL DEFENDANTS; (6) RECISSION BASED ON MISTAKE (CAL. CIV. CODE §1689 ET SEQ.); (7) AND DECLARATORY RELIEF.

4938-2627-9577, v. 1

Agreement.

19. In or in connection with joining Cantor, DeMordaunt, in course and scope of his employment with Cantor, began soliciting Plaintiffs' business, with the intent to induce Plaintiffs Rolling Hills and NFC to terminate the Deloitte Advisory Agreement and for Plaintiffs collectively to sign a new services agreement with Cantor covering the same work Plaintiffs Rolling Hills and NFC had contracted with Deloitte to perform.

20. DeMordaunt personally visited Plaintiffs' business in Hickman, California (Stanislaus County) on multiple occasions with other Cantor representatives to solicit Plaintiffs to induce Plaintiffs to terminate their relationship with Deloitte and sign an agreement with Cantor.

21. Plaintiffs are informed and believe, and on that basis allege that, in soliciting Plaintiffs' business, Defendant Cantor and DeMordaunt, in the course and scope of his role as Managing Director at Cantor, used confidential documents and information belonging to Deloitte, which neither DeMordaunt nor Cantor had the right to use, including confidential information taken from the Deloitte CIM. Defendants' use of this confidential information, which was protected from disclosure by the Deloitte NDA, benefited Cantor in attempting to secure RHN and other Plaintiffs as clients for Cantor.

22. DeMordaunt, acting in course and scope of his role as a Managing Director for and on behalf of Defendant Cantor, introduced several Cantor employees to Plaintiffs in a continuing effort to induce Plaintiffs Rolling Hills and NFC to terminate their unexpired agreement with Deloitte and for all Plaintiffs to enter into a new agreement with Cantor.

23. Through these initial interactions, Plaintiffs recognized that the team DeMordaunt would be managing at Cantor lacked the expertise, depth of knowledge, and sector-specific experience in the Food, Beverage, and Agriculture industry, which the Deloitte Team possessed. Plaintiffs considered the Deloitte Team's experience and industry-specific knowledge to be critical to the expected success of their transaction strategy.

24. Between September 2023 and January 2, 2024, DeMordaunt, acting within the course and scope of his employment with Cantor, made multiple misrepresentations to Plaintiffs' leadership and owners, who were then-presently located in Stanislaus County. Specifically, Cantor,

COMPLAINT FOR: (1)FRAUD-INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS; (2) FRAUD-NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS; (3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST ALL DEFENDANTS; (4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS; (5) CONSPIRACY AGAINST ALL DEFENDANTS; (6) RECISSION BASED ON MISTAKE (CAL. CIV. CODE §1689 ET SEQ.); (7) AND DECLARATORY RELIEF.

4938-2627-9577, v. 1

through DeMordaunt, represented to Plaintiffs, on several occasions, that approximately thirty (30) or more members of the well-qualified and experienced Deloitte Team, some of whom Plaintiffs Rolling Hills and NFC had been working with since May 2022, were in the process of leaving Deloitte and would be following DeMordaunt to Cantor. Later, Cantor falsely promised Plaintiffs that, because the key members of the Deloitte Team would be leaving Deloitte to join Cantor, Plaintiffs would benefit from a seamless transition in services from Deloitte to Cantor. Each of these representations and promises were false.

25.    Believing Defendant Cantor's (DeMordaunt's) false representations and promises, Plaintiffs grew deeply concerned that the impending departure of certain senior staff members assigned to Plaintiffs Rolling Hills' and NFC's project were leaving Deloitte and joining Cantor, and for that reason, Plaintiffs Rolling Hills and NFC became insecure about Deloitte's ability to continue providing the services described in the Deloitte Advisory Agreement.

26.    Based on Cantor's repeated representations and promises to Plaintiffs Rolling Hills and NFC concerning Cantor's progress in staffing its non-existent Food, Beverage & Agriculture team with key members of the Deloitte Team, and the adverse impact that would likely result from a completely new team taking over Plaintiffs Rolling Hills' and NFC's work, Plaintiffs Rolling Hills and NFC were induced by Defendants to terminate their unexpired contract with Deloitte in early 2024.

27.    On January 2, 2024, Plaintiffs Rolling Hills and NFC sent Deloitte a letter providing notice of their termination of the Deloitte Advisory Agreement. In the letter, Plaintiffs Rolling Hills and NFC explained that the reason for their decision to terminate the Deloitte contract was based on Plaintiffs' then-understanding that, as of January 2, 2024, "certain senior staff member(s) have departed from [Deloitte's] employ," and the presumed "departure of staff [from Deloitte] causes Rolling Hills and NFC to be insecure with [Deloitte's] ability to continue to provide the Services as required for the engagement moving forward." This termination notice alerted Deloitte that Plaintiffs Rolling Hills and NFC were concerned that the departure of personnel (as represented by DeMordaunt) would have a negative impact on a sale process.

///

6

4938-2627-9577, v. 1

28. Defendants intended to and did fraudulently induce Rolling Hills and NFC to terminate the Deloitte Advisory Agreement, by written letter, on January 2, 2024; and the effective date of termination per the terms of the Deloitte Advisory Agreement was February 2, 2024, 30 days following Plaintiffs' written notice of termination.

29. Between May 23, 2022, and January 2, 2024, Deloitte invested substantial resources and performed substantial work in connection with preparing the Deloitte CIM and developing and compiling the documents, materials, and information necessary to devise a comprehensive go-to-market strategy and then implementing the go-to-market strategy for Plaintiffs Rolling Hills and NFC.

30. But for Defendants' representations and Plaintiffs' understanding based on such representations that key members of the Deloitte Team were leaving Deloitte, Plaintiffs Rolling Hills and NFC would not have terminated the Deloitte Advisory Agreement.

31. Plaintiffs paid Deloitte approximately $170,000 (One Hundred Seventy Thousand Dollars) out of pocket under the Deloitte Advisory Agreement. Had Plaintiffs had not terminated the Deloitte Advisory Agreement early based on Defendants' false representations, the costs and expenses incurred under the Deloitte Advisory Agreement would have been paid at the time of a closing of a sale transaction out of the proceeds from such sale.

32. Believing Cantor's misrepresentations that multiple members of the Deloitte Team were leaving Deloitte and joining Cantor, RHN entered into the Cantor Professional Services Agreement ("Cantor Services Agreement") with Cantor, in or about April 2024.

33. Defendant Cantor intentionally interfered with Plaintiffs Rolling Hills' and NFC's contract and business relationship with Deloitte, and intentionally interfered with Plaintiff RHN's prospective economic advantage in the go-to-market strategy and prospective transactions the Deloitte Team had identified. RHN had no plan to terminate the Deloitte Advisory Agreement early and only did so because DeMordaunt and Cantor told RHN, and RHN believed that the Deloitte Team was leaving Deloitte to join Cantor. Plaintiffs' early termination of the Deloitte Advisory Agreement effectively destroyed the relationship between RHN and Deloitte and so there was no option for Plaintiffs to return to Deloitte after Cantor subsequently failed to fulfill its representations and promises regarding the

COMPLAINT FOR: (1)FRAUD-INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS; (2) FRAUD-NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS; (3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST ALL DEFENDANTS; (4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS; (5) CONSPIRACY AGAINST ALL DEFENDANTS; (6) RECISSION BASED ON MISTAKE (CAL. CIV. CODE §1689 ET SEQ.); (7) AND DECLARATORY RELIEF.

4938-2627-9577, v. 1

transition of the Deloitte team that never occurred.

34. Although the Cantor Professional Services Agreement was signed in mid-April 2024, Cantor did not furnish RHN with any work product until February 2025, nearly 10 months after the Cantor Services Agreement was executed.

35. Between January 2, 2024, and February 19, 2025, Cantor fraudulently concealed or failed to disclose to Plaintiffs that Cantor did not have a Food, Beverage & Agriculture team staffed with experienced members from the Deloitte Team. This truth did not become evident to Plaintiffs until early 2025, when DeMordaunt and new members of the Cantor team assigned to provide RHN service (the "Cantor Team") presented Cantor's plan and go-to-market strategy for RHN during a meeting at Plaintiffs' office in the city of Hickman in Stanislaus County, California.

36. On or about February 19, 2025, DeMordaunt and members of the Cantor team traveled to Plaintiffs' California facilities and made an in-person presentation to the owners of Plaintiffs (the "February 19 Meeting"). The purpose of this meeting was for Cantor to present its go-to-market strategy, qualifications, and plan for a sale of Plaintiffs.

37. At the February 19 Meeting, the Cantor Team presented Plaintiffs with a Confidential Information Memorandum (the "Cantor CIM"), which was essentially a replica of Deloitte's CIM from 2022.

38. Cantor's presentation at the February 19 Meeting revealed to Plaintiffs that the Cantor Team clearly lacked the requisite depth of knowledge and experience in the Food, Beverage, and Agriculture sector that the Deloitte Team had possessed and which Plaintiffs were expecting. It became clear to Plaintiffs during the February 19 Meeting that, contrary to Defendants' previous representations and promises, the Cantor Team was not knowledgeable, experienced, or adequately equipped to implement a successful go-to-market plan that would result in a successful transaction for Plaintiffs. Plaintiffs further became aware on or about the February 19 meeting that key members of the Deloitte Team had not left and would not be leaving Deloitte to join Cantor as Defendants had represented.

39. Further, Cantor's presentation and conduct during the February 19 Meeting indicated that, despite Cantor not having hired any other key members of the Deloitte Team beside

COMPLAINT FOR: (1)FRAUD-INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS; (2) FRAUD-NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS; (3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST ALL DEFENDANTS; (4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS; (5) CONSPIRACY AGAINST ALL DEFENDANTS; (6) RECISSION BASED ON MISTAKE (CAL. CIV. CODE §1689 ET SEQ.); (7) AND DECLARATORY RELIEF.

4938-2627-9577, v. 1

DeMordaunt, Cantor apparently accessed and used confidential documents, materials and information protected by the Deloitte NDA. The Cantor CIM, for example, was nothing more than an ill-disguised re-brand of the Deloitte CIM, with little if any new information or materials.

40. Plaintiffs are informed and believe, and on that basis allege that, with Cantor's knowledge and approval, DeMordaunt took copies of Plaintiffs' confidential and proprietary documents, materials, and information from Deloitte, as well as work product belonging to and prepared by Deloitte while DeMordaunt employed by Deloitte and while Deloitte was engaged in a business relationship with Plaintiffs.

41. Plaintiffs are further informed and believe, and on that basis allege that Cantor wrongfully utilized Plaintiffs' and Deloitte's confidential and protected documents, materials and information, including the Deloitte CIM, for the benefit of Cantor and to the detriment of Deloitte and Plaintiffs.

42. Cantor's lack of a professional team with relevant sector knowledge and experience and its blatant reliance on Deloitte's work product and information (likely in violation of the Deloitte NDA), ten months into the engagement, were serious red flags indicating that Cantor was not equipped or experienced to handle the services Cantor promised to provide, and that Cantor had misled Plaintiffs to induce Plaintiffs to terminate their business relationship and contract with Deloitte.

43. Following Cantor's presentation at the February 19 Meeting, Plaintiffs recognized that they had been misled by the misrepresentations and false promises made by DeMordaunt and Cantor. No members of the seasoned Deloitte Team working on Plaintiffs' project joined the Cantor Team, other than DeMordaunt, contrary to the promises and representations made by Cantor.

44. Contrary to the representations made to Plaintiffs by Cantor, Cantor did not have an appropriately staffed and experienced Food, Beverage & Agriculture team with experienced members from the Deloitte Team; in fact, Cantor did not have a qualified Food, Beverage & Agriculture team at all.

45. Plaintiffs reasonably relied on Defendants' false promises and misrepresentations to their detriment.

9

COMPLAINT FOR: (1)FRAUD-INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS; (2) FRAUD-NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS; (3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST ALL DEFENDANTS; (4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS; (5) CONSPIRACY AGAINST ALL DEFENDANTS; (6) RECISSION BASED ON MISTAKE (CAL. CIV. CODE §1689 ET SEQ.); (7) AND DECLARATORY RELIEF.

4938-2627-9577, v. 1

46. But for the false promises and misrepresentations made by Cantor to Plaintiffs, RHN would not have terminated its unexpired agreement with Deloitte and would not have entered into the Cantor Professional Services Agreement.

47. RHN terminated the Cantor Professional Services Agreement by letter dated May 16, 2025.

48. By letter dated May 22, 2025, Cantor, through Sage Kelly, acknowledged receipt of RHN's termination letter (received on May 20, 2025). In this May 22 letter, Cantor refused to waive its "tail fee entitlements," and provided RHN an invoice for outstanding expenses to be reimbursed.

49. Missing from Mr. Kelly's letter was any acknowledgement that Cantor had failed to keep the promises it had made to induce Plaintiffs to end its contractual arrangement with Deloitte and enter into an agreement with Cantor in the first place.

50. RHN subsequently paid Cantor approximately $22,000 (Twenty Two Thousand Dollars) in expense reimbursement following termination of the Cantor Services Agreement.

51. Thereafter, Plaintiffs were forced to retain yet another financial services company to attempt to bring their respective companies to market for sale.

52. Plaintiffs have suffered injury as a result of Defendant Cantor's wrongful conduct, for which they intend to seek recovery, including recovery of actual damages including but not limited to the fees paid to Deloitte and the fees paid to Cantor, out of pocket expenses, wasted executive and employee time, interest on these sums, exemplary damages, and attorney's fees as allowed by law.

## FIRST CAUSE OF ACTION

(Fraud-Intentional Misrepresentation Against All Defendants)

53. Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 52, above.

54. On numerous occasions between September 2023 and April 2024, Defendants represented to Plaintiffs that thirty or more members of the Deloitte Food, Beverage, and Agriculture team were leaving Deloitte and these Deloitte Team members would be staffed on Plaintiffs' project at Cantor, if Plaintiffs terminated their contract with Deloitte and signed the Cantor Services Agreement.

10

COMPLAINT FOR: (1)FRAUD-INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS; (2) FRAUD-NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS; (3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST ALL DEFENDANTS; (4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS; (5) CONSPIRACY AGAINST ALL DEFENDANTS; (6) RECISSION BASED ON MISTAKE (CAL. CIV. CODE §1689 ET SEQ.); (7) AND DECLARATORY RELIEF.

4938-2627-9577, v. 1

55.    Defendants' representations were false, and Defendants knew that these representations were false when they made them, or Defendants made these representations recklessly and without regard to whether Cantor could or would hire any of the thirty plus members from Deloitte' Food, Beverage, and Agriculture team.

56.    Defendants intended that Plaintiffs rely on Defendants' representations to terminate the Deloitte Advisory Agreement and execute the Cantor Services Agreement.

57.    Plaintiffs reasonably relied on Defendants' representations, and Plaintiffs did terminate the Deloitte Advisory Agreement and sign the Cantor Services Agreement.

58.    Plaintiffs were harmed in that they incurred and paid fees to both DeLoittte and Cantor, expended a significant amount of out-of-pocket expenses, incurred a substantial amount of executive and employee time devoted to these transactions, and interest on these sums.

59.    Plaintiffs were fraudulently induced to enter into the Cantor Services Agreement and on that basis seek rescission of the Cantor Services Agreement, a return of all consideration paid to Cantor and return of Plaintiffs to their condition before the execution of the Cantor Services Agreement including recovery of any damages or equitable adjustments necessary to restore Plaintiffs to their pre-contract status. To the extent necessary, Plaintiffs offer to restore to Cantor anything of value owed by Plaintiffs.  Service of this Complaint constitutes Plaintiffs' notice of rescission to Defendants.

60.    In light of Defendants' malicious, fraudulent and oppressive, conduct Plaintiffs seek damages as a result of Defendants' fraud including actual damages, interest thereon, punitive damages, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION

(Fraud -- Negligent Misrepresentation Against All Defendants)

61.    Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 52, above.

62.    On numerous occasions between September 2023 and April 2024, Defendants represented to Plaintiffs that thirty or more members of the Deloitte Food, Beverage, and Agriculture team were leaving Deloitte and these Deloitte Team members would be staffed on Plaintiffs' project at

COMPLAINT FOR: (1)FRAUD-INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS; (2) FRAUD-NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS; (3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST ALL DEFENDANTS; (4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS; (5) CONSPIRACY AGAINST ALL DEFENDANTS; (6) RECISSION BASED ON MISTAKE (CAL. CIV. CODE §1689 ET SEQ.); (7) AND DECLARATORY RELIEF.

4938-2627-9577, v. 1

Cantor, if Plaintiffs terminated their contract with Deloitte and signed the Cantor Services Agreement.

63.    Defendants' representations were false and although Defendants may have honestly believed that the representation was true it, Defendants had no reasonable grounds for believing the representations were true when Defendants made them.

64.    Defendants intended that Plaintiffs rely on Defendants' representations to terminate the Deloitte Advisory Agreement and execute the Cantor Services Agreement.

65.    Plaintiffs reasonably relied on Defendants' representations, and Plaintiffs did terminate the Deloitte Advisory Agreement and sign the Cantor Services Agreement.

66.    Plaintiffs were harmed in that they incurred and paid fees to both DeLoittte and Cantor, expended a significant amount of out-of-pocket expenses, incurred a substantial amount of executive and employee time devoted to these transactions, and interest on these sums.

67.    Plaintiffs' reliance on Defendants' representation was reasonable and a substantial factor in causing their harms, including the costs paid to Cantor as reimbursed expenses under the Cantor Services Agreement, for which Plaintiff received no benefit.

68.    Plaintiffs were fraudulently induced to enter into the Cantor Services Agreement and on that basis seek rescission of the Cantor Services Agreement, a return of all consideration paid to Cantor and return of Plaintiffs to their condition before the execution of the Cantor Services Agreement including recovery of any damages or equitable adjustments necessary to restore Plaintiffs to their pre-contract status. To the extent necessary, Plaintiffs offer to restore to Cantor anything of value owed by Plaintiffs. Service of this Complaint constitutes Plaintiffs' notice of rescission to Defendants.

69.    In light of Defendants' fraud, Plaintiffs seek damages as a result of Defendants' fraud including actual damages, interest thereon, and attorneys' fees and costs.

## THIRD CAUSE OF ACTION

(Intentional Interference with Contractual Relations Against All Defendants)

70.    Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 69, above.

71.    There was a valid contract, the Deloitte Advisory Agreement, between Rolling

COMPLAINT FOR: (1)FRAUD-INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS; (2) FRAUD-NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS; (3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST ALL DEFENDANTS; (4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS; (5) CONSPIRACY AGAINST ALL DEFENDANTS; (6) RECISSION BASED ON MISTAKE (CAL. CIV. CODE §1689 ET SEQ.); (7) AND DECLARATORY RELIEF.

4938-2627-9577, v. 1

Hills and NFC on the one hand, and Deloitte on the other hand.

72. Defendants were aware of the Deloitte Advisory Agreement.

73. Defendants were not a party to the Deloitte Advisory Agreement.

74. Defendants' conduct in utilizing the confidential information, materials, and documents protected under the Deloitte NDA, and false statements described herein induced Plaintiffs to terminate the Deloitte Advisory Agreement.

75. Defendants' false representations that thirty or more Deloitte Team members were leaving Deloitte to join Cantor was a substantial factor in convincing Plaintiffs that Deloitte would be unable to perform the Deloitte Advisory Agreement, was in breach of the Deloitte Advisory Agreement, or would become in breach of the Deloitte Advisory Agreement.

76. Defendants, through their conduct, intended to disrupt Plaintiffs' performance under the Deloitte Advisory Agreement, or knew that disruption of Plaintiffs' performance was certain or substantially certain to occur.

77. Defendants' conduct described herein was a substantial factor in causing Plaintiffs to terminate the Deloitte Advisory Agreement.

78. As a direct and proximate result of Defendants' conduct, Plaintiffs were harmed in that they incurred and paid fees to both Deloitte and Cantor, expended a significant amount of out-of-pocket expenses, incurred a substantial amount of executive and employee time devoted to these transactions, and interest on these sums. In light of Defendants' malicious, fraudulent and oppressive, conduct Plaintiffs seek damages as a result of Defendants' fraud including punitive damages.

## FOURTH CAUSE OF ACTION

(Intentional Interference with Prospective Economic Advantage Against All Defendants)

79. Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 69, above.

80. Plaintiffs and Deloitte were in an economic relationship that probably would have resulted in an economic benefit and advantage to Plaintiffs. This economic relationship involved the prospective sale of Plaintiffs to buyers identified by Deloitte, based on terms, documents, materials, and

13

COMPLAINT FOR: (1)FRAUD-INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS; (2) FRAUD-NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS; (3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST ALL DEFENDANTS; (4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS; (5) CONSPIRACY AGAINST ALL DEFENDANTS; (6) RECISSION BASED ON MISTAKE (CAL. CIV. CODE §1689 ET SEQ.); (7) AND DECLARATORY RELIEF.

4938-2627-9577, v. 1

information exchanged between Plaintiffs and Deloitte and protected under the Deloitte NDA.

81.     Cantor knew of Plaintiffs' and Deloitte's relationship and of the Deloitte NDA, because DeMordaunt previously worked for Deloitte and executed the Deloitte NDA himself, as the then-Managing Director at Deloitte.

82.     Cantor's conduct in utilizing the confidential information, materials, and documents protected under the Deloitte NDA, and false statements described herein were designed to induced Plaintiffs to terminate the Deloitte Advisory Agreement and not continue Plaintiffs' economic relationship with Deloitte.

83.     Cantor's false representations that thirty or more Deloitte Team members were leaving Deloitte to join Cantor convinced Plaintiffs that Deloitte would be unable to perform the Deloitte Advisory Agreement, was in breach of the Deloitte Advisory Agreement, or would become in breach of the Deloitte Advisory Agreement.

84.     Cantor, through the conduct of its employees, intended to disrupt Plaintiffs' performance under the Deloitte Advisory Agreement and interfere with Plaintiffs' and Deloitte's expected prospective economic relationship and advantages, or knew that disruption of Plaintiffs' performance was certain or substantially certain to occur.

85.     Cantor's conduct described herein did disrupt Plaintiffs' economic relationship with Deloitte, was a substantial factor in causing Plaintiffs to terminate the Deloitte Advisory Agreement and was a substantial factor in causing Plaintiffs to not continue its economic relationship with Deloitte.

86.     Plaintiffs' relationship with Deloitte, was disrupted and interfered with because Plaintiffs terminated the Deloitte Advisory Agreement and did not continue its relationship with Deloitte based on Cantor's misrepresentations and false promises.

87.     As a direct and proximate result of Cantor's conduct, Plaintiffs were harmed in that they incurred and paid fees to both Deloitte and Cantor, expended a significant amount of out-of-pocket expenses, incurred a substantial amount of executive and employee time devoted to these transactions, and interest on these sums. In light of Cantor's malicious, fraudulent and oppressive, conduct Plaintiffs seek damages as a result of Cantor's fraud including punitive damages.

COMPLAINT FOR: (1)FRAUD-INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS; (2) FRAUD-NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS; (3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST ALL DEFENDANTS; (4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS; (5) CONSPIRACY AGAINST ALL DEFENDANTS; (6) RECISSION BASED ON MISTAKE (CAL. CIV. CODE §1689 ET SEQ.); (7) AND DECLARATORY RELIEF.

4938-2627-9577, v. 1

## FIFTH CAUSE OF ACTION

(Conspiracy Against All Defendants)

88.    Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 87, above.

89.    Plaintiffs are informed and believe, and on that basis allege that Defendants willfully and maliciously conspired between at least September 2023 and April 22, 2024, to solicit and retain Plaintiffs as Cantor's clients by fraudulently inducing Plaintiffs to terminate the Deloitte Advisory Agreement. Defendants' engaged in affirmative acts in furtherance of the unlawful goal of interfering with Plaintiffs' and Deloitte's business relations, by exploiting Deloitte's protected work product, and making misrepresentations and false promises to Plaintiffs, to both Plaintiffs' and Deloitte's detriment, regarding the quality, qualifications, number, and intent of Cantor employees staffed on Plaintiffs' project.

90.    Between September 2023 and April 22, 2024, Defendants were aware that DeMordaunt planned to induce Plaintiffs to terminate the Deloitte Advisory Agreement. Plaintiffs are informed and believe, and based thereon allege that, Defendants knew of, and agreed with a common unlawful scheme intended to induce Plaintiffs to terminate the Deloitte Advisory Agreement by wrongfully exploiting materials and documents protected by the Deloitte NDA, and falsely representing that Cantor would hire multiple Deloitte employees assigned to Plaintiffs' project. Defendants cooperated in providing the resources to alter and present Deloitte's confidential materials to Plaintiffs as Cantor's, and communicate the misrepresentations to Plaintiffs, all for Cantor's benefit.

91.    Cantor was aware that Does 1-25 planned to induce Plaintiffs to execute the Cantor Services Agreement, and retain Cantor, by making the false statements alleged herein, and by wrongfully utilizing documents, materials, and information wrongfully taken from Deloitte. Cantor agreed with the common scheme to exploit Deloitte's work product, and supported Doe defendants' efforts to misrepresent Cantor's intent, experience, and qualifications, which was intended to and did cause Plaintiffs to execute the Cantor Services Agreement and continue to retain Cantor until Plaintiffs discovered the truth—that Cantor never had the ability and/or never intended to provide Plaintiffs with

15

COMPLAINT FOR: (1)FRAUD-INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS; (2) FRAUD-NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS; (3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST ALL DEFENDANTS; (4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS; (5) CONSPIRACY AGAINST ALL DEFENDANTS; (6) RECISSION BASED ON MISTAKE (CAL. CIV. CODE §1689 ET SEQ.); (7) AND DECLARATORY RELIEF.

4938-2627-9577, v. 1

services comparable to those Deloitte provided under the Deloitte Advisory Agreement.

92. Plaintiffs were fraudulently induced to enter into the Cantor Services Agreement and on that basis seek rescission of the Cantor Services Agreement, a return of all consideration paid to Cantor and return of Plaintiffs to their condition before the execution of the Cantor Services Agreement including recovery of any damages or equitable adjustments necessary to restore Plaintiffs to their pre-contract status. To the extent necessary, Plaintiffs offer to restore to Cantor anything of value owed by Plaintiffs. Service of this Complaint constitutes Plaintiffs' notice of rescission to Defendants.

93. As a direct and proximate result of Defendants' unlawful acts described herein, and Defendants' common goal to defraud and interfere with the economic relations of Plaintiffs, to benefit Cantor, Plaintiffs were harmed. Plaintiffs' harms include the fees incurred and paid to both Deloitte and Cantor, significant out-of-pocket expenses, a substantial amount of executive and employee time devoted to developing the go-to-market strategies, roadshows, and transaction preparations, and interest on these sums. Therefore, Plaintiffs seek actual damages, and punitive damages caused by Defendants' malicious, fraudulent, and oppressive conduct in committing the fraud herein described.

## SIXTH CAUSE OF ACTION

(Recission based on Mistake (Cal. Civ. Code §1689 et seq.))

94. Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 69, above.

95. Cantor knew Plaintiffs were mistaken in believing the representations made by Cantor and its employees regarding the hiring and staffing Cantor's team with members of the Deloitte Team were true and accurate. Cantor also knew its representations were intentionally and materially false, or at best, Cantor did not have a reasonable basis to make the representations.

96. Cantor's representations were a material inducement to Plaintiffs to enter into the Cantor Services Agreement. Plaintiffs would not have entered into the Cantor Services Agreement but for Plaintiffs' material mistake of fact.

97. Because the Cantor Services Agreement lacked mutual asset, it is void and should be rescinded.

COMPLAINT FOR: (1)FRAUD-INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS; (2) FRAUD-NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS; (3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST ALL DEFENDANTS; (4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS; (5) CONSPIRACY AGAINST ALL DEFENDANTS; (6) RECISSION BASED ON MISTAKE (CAL. CIV. CODE §1689 ET SEQ.); (7) AND DECLARATORY RELIEF.

4938-2627-9577, v. 1

98.     In light of Plaintiffs' mistake, Plaintiffs have been harmed by the fact that they agreed to the terms of the Cantor Services Agreement for inadequate consideration. Plaintiffs seek rescission of the Cantor Services Agreement on the grounds of mistake of fact, a return to Plaintiffs of all consideration paid to Cantor and return of Plaintiffs to their condition before the execution of the Cantor Services Agreement including recovery of any damages or equitable adjustments necessary to restore Plaintiffs to their pre-contract status.  If Plaintiffs owe anything to Cantor to restore Cantor to its pre-contract status, Plaintiffs are willing to restore Cantor to its pre-contract status.

99.     Service of this Complaint constitutes Plaintiffs' notice of rescission to Cantor.

## SEVENTH CAUSE OF ACTION

### (Declaratory Relief)

100.    Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 69 and 95-99, above.

101.    Plaintiffs allege that a real and present controversy exists between Plaintiffs and Defendant Cantor concerning the validity of the Cantor Services Agreement, the enforceability of agreement as a whole, specifically Cantor's right to claim any fee or compensation under the "tail end fee" provisions in the Cantor Services Agreement, and whether Cantor is required to return to Plaintiffs the fees previously paid to Cantor.

102.    Plaintiffs allege that the Cantor Services Agreement is invalid and unenforceable, that Cantor's has no right to claim any fee or compensation under the "tail end fee" provisions in the Cantor Services Agreement, and Cantor is required to return to Plaintiffs the fees previously paid to Cantor.

103.    Plaintiffs further aver that any potential claim by Cantor pursuant to the "tail end fee" provision in the Cantor Services Agreement, if enforced, would unjustly enrich Cantor for its wrongful conduct in procuring the Cantor Services Agreement.

104.    Plaintiffs are informed and believe that Cantor disputes Plaintiffs' contentions and Cantor contends that the Cantor Services Agreement is valid and enforceable, that Cantor's has is entitled to claim any fee or compensation under the "tail end fee" provisions in the Cantor Services

17

COMPLAINT FOR: (1)FRAUD-INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS; (2) FRAUD-NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS; (3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST ALL DEFENDANTS; (4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS; (5) CONSPIRACY AGAINST ALL DEFENDANTS; (6) RECISSION BASED ON MISTAKE (CAL. CIV. CODE §1689 ET SEQ.); (7) AND DECLARATORY RELIEF.

4938-2627-9577, v. 1

Agreement, and Cantor is not required to return to Plaintiffs the fees previously paid to Cantor.

105.    As a result of the above-referenced controversies and other, Plaintiff seeks a declaration of the parties' respective rights, duties, and obligations under the Cantor Services Agreement.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for Judgment against Defendants as follows:

On the First Cause of Action (Fraud – Intentional Misrepresentation Against All Defendants), for:

1. Rescission of Cantor Services Agreement
2. Actual damages in an amount not less $200,000
3. Attorneys' fees and costs;
4. Costs of suit;
5. Interest at the legal rate on all sums awarded;
6. Punitive damages; and
7. Such other and further relief as the Court may deem just and proper.

On the Second Cause of Action (Fraud – Negligent Misrepresentation Against All Defendant), for:

1. Rescission of Cantor Services Agreement;
2. Actual damages of not less than $200,000;
3. Attorneys' fees and costs;
4. Costs of suit;
5. Interest at the legal rate on all sums awarded;
6. Punitive damages; and
7. Such other and further relief as the Court may deem just and proper.

On the Third Cause of Action (Intentional Interference with Contractual Relations Against All Defendants), for:

1. Actual damages in an amount not less than $775,000;

COMPLAINT FOR: (1)FRAUD-INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS; (2) FRAUD-NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS; (3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST ALL DEFENDANTS; (4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS; (5) CONSPIRACY AGAINST ALL DEFENDANTS; (6) RECISSION BASED ON MISTAKE (CAL. CIV. CODE §1689 ET SEQ.); (7) AND DECLARATORY RELIEF.

4938-2627-9577, v. 1

2.  Costs of suit;

3.  Interest at the legal rate on all sums awarded;

4.  Attorneys' fees and costs;

5.  Punitive damages; and

6.  Such other and further relief as the Court may deem just and proper.

On the Fourth Cause of Action (Intentional Interference with Prospective Economic Advantage Against All Defendants), for:

1.  Actual damages in an amount not less than $775,000;

2.  Attorneys' fees and costs;

3.  Costs of suit;

4.  Interest at the legal rate on all sums awarded;

5.  Punitive damages; and

6.  Such other and further relief as the Court may deem just and proper.

On the Fifth Cause of Action (Conspiracy Against All Defendants), for:

1.  Rescission of Cantor Services Agreement;

2.  Actual damages of not less than $775,000;

3.  Attorneys' fees and costs;

4.  Costs of suit;

5.  Interest at the legal rate on all sums awarded;

6.  Punitive damages; and

7.  Such other and further relief as the Court may deem just and proper.

On the Sixth Cause of Action (Recission based on Mistake), for:

1.  Rescission of the Cantor Services Agreement;

2.  Actual Damages of not less than $200,000;

3.  Attorneys' fees and costs;

4.  Costs of suit; and

5.  Such other and further relief as the Court may deem just and proper.

19

COMPLAINT FOR: (1)FRAUD-INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS; (2) FRAUD-NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS; (3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST ALL DEFENDANTS; (4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS; (5) CONSPIRACY AGAINST ALL DEFENDANTS; (6) RECISSION BASED ON MISTAKE (CAL. CIV. CODE §1689 ET SEQ.); (7) AND DECLARATORY RELIEF.

4938-2627-9577, v. 1

On the Seventh Cause of Action (Declaratory Relief), for:

1.  An order declaring the Cantor Services Agreement invalid and unenforceable; and

2.  An order declaring the rights and duties of the Parties under the Cantor Services Agreement.

3.  Attorneys' fees and costs;

4.  Costs of suit; and

5.  Such other and further relief as the Court may deem just and proper.

6.  Jury Trial Demanded.

Dated: March 19, 2026

WANGER JONES HELSLEY PC

By:_____
Scott D. Laird
Ethan E. Mora
Attorneys for Plaintiff RHN FOOD
GROUP HOLDINGS, INC., ROLLING
HILLS NUT COMPANY LLC and
NORTHSIDE FOOD COMPANY LLC

20

COMPLAINT FOR: (1)FRAUD-INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS; (2) FRAUD-NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS; (3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST ALL DEFENDANTS; (4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS; (5) CONSPIRACY AGAINST ALL DEFENDANTS; (6) RECISSION BASED ON MISTAKE (CAL. CIV. CODE §1689 ET SEQ.); (7) AND DECLARATORY RELIEF.

4938-2627-9577, v. 1